**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re:<br><br>Nathan Reardon,<br><br>                     Debtor | Chapter 13<br>Case No. 21-10097 |

## ORDER (I) DETERMINING THAT THE STAY DOES NOT APPLY AND, (II) IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY

Central Street Studios, LLC has filed a motion for relief from the automatic stay or, in the alternative, a determination that the stay does not bar its efforts to obtain possession of certain real property [Dkt. No. 15] (the "Motion"). Specifically, Central Street seeks to continue—free from the automatic stay—an action for possession of real estate located at 28 Research Drive in Skowhegan, Maine (the "Property"). The Debtor objects. *See* [Dkt. No. 23]. During a preliminary, non-evidentiary hearing on the Motion on June 10, 2021, the Debtor did not ask for an opportunity to adduce evidence in support of his objection or request that the hearing be continued for any reason. As such, the factual landscape is derived from: (a) the allegations in the Motion that the Debtor admits in his objection; (b) the exhibits attached to the Motion, the authenticity of which the Debtor did not contest; and (c) the Debtor's own representations in his schedules and statements, [Dkt. Nos. 1 & 9]. That landscape reveals the following facts.

In July 2020, Central Street entered into an agreement to lease the Property to Global Disruptive Technologies, Inc. ("GDT"), an entity incorporated and operated by the Debtor. The lease specified that the Property may be used for office space and living quarters. The lease set a term of three years, with monthly rental payments by GDT to Central Street. GDT was not permitted to assign its interest in the lease without Central Street's prior written consent. The

lease contemplated that GDT would make modifications to the Property and pay for all associated materials and labor.  The lease provided that GDT "shall not suffer or permit any lien of any nature or description to be placed against the building, the premises or any portion thereof, and in the case of any such lien attaching by reason of the conduct of [GDT, GDT] shall immediately pay and remove the same[.]"  [Dkt. No. 15-3, Ex. A ¶ 13.]  The lease further provided that if GDT defaulted on its obligations under the lease and failed to correct that default within a specified period following written notice, Central Street would be entitled to terminate the lease.

In February 2021, Central Street learned that a mechanic's lien had been placed against the Property for nonpayment of labor and materials furnished by a plumber under a contract with the Debtor.  Central Street notified GDT that the recordation of the mechanic's lien rendered GDT in default of the lease and advised that GDT had 10 days to cure the default by paying the lien in full.  Two weeks later, Central Street sent GDT a written notice of termination of the lease.  Central Street then commenced a forcible entry and detainer ("FED") action against GDT.  Meanwhile, two other mechanic's liens were recorded against the Property for work performed at the Property under contracts with the Debtor.

In April 2021, the Debtor began this chapter 13 case.  He currently lives at the Property with his spouse and children.  On his Schedule A/B, the Debtor lists as a "financial asset" a "residential lease" of the Property "transferred to Debtor by disincorporated" GDT.  [Dkt. No. 9, p. 7.]  On his Schedule G, the Debtor indicates that he intends to assume the lease with Central Street.  The Debtor claims to be a counterparty to the lease because of GDT's prepetition "disincorporation."  He denies that the lease was terminated prepetition, asserting that "GDT

took steps to obtain a lien release, which release was apparently placed without the landlord's consent and may be invalid." [Dkt. No. 23, ¶ 13.]

Central Street asks the Court to conclude that the stay does not bar the continuation of the FED action.  In the alternative, Central Street asks the Court to grant relief from stay under 11 U.S.C. § 362(d)(1) and/or (2).  Central Street is entitled to the relief requested, although the route to this conclusion differs in certain respects from that hewn by Central Street.

The stay does not apply to Central Street's FED action against GDT because the Debtor is not a party to that action and GDT's interest in the Property is not property of the Debtor's bankruptcy estate.  GDT, not the Debtor, is the lessee of the Property.  The lease bars GDT's attempted assignment of the leasehold interest to the Debtor without the consent of Central Street, and the Debtor concedes that Central Street did not consent to GDT's attempted assignment of the lease.  Instead, he contends that the Bankruptcy Code permitted GDT's "disincorporation" and therefore legitimized the attempted assignment.  But no specific provisions of the Bankruptcy Code identified by the Debtor override the anti-assignment provision in a lease between two non-debtor entities.  The Debtor concedes that state law does not invalidate the anti-assignment clause either.  In light of this concession, the Court concludes that the assignment was not effective to make the lease part of the estate in the Debtor's case, and that the stay does not insulate the Property from Central Street's FED action.

Even if the Debtor could establish some sort of equitable interest in the Property arising out of mere possession—a feat he has not attempted by reference to any provisions of applicable nonbankruptcy law—relief from stay would be warranted for cause for under 11 U.S.C. § 362(d)(1). The Debtor may wish to assume the lease under 11 U.S.C. § 365, but he has not met his burden of showing either a factual or a legal entitlement to do so.  *See* 11 U.S.C. § 362(g)(2).

It appears that the lease is not "unexpired" within the meaning of section 365; it was apparently terminated by Central Street prior to the petition date. *See* Moody v. Amoco Oil Co., 734 F.2d 1200, 1212 (7th Cir. 1984) ("If a contract has been terminated pre-bankruptcy, there is nothing left for the debtor to assume."); *see also* Chart House, Inc. v. Maxwell (In re Maxwell), 40 B.R. 231, 238 (N.D. Ill. 1984) ("Even if Maxwell has or had some protectible equitable interest stemming from his continued occupation of the restaurant premises, this interest is not sufficient to revive the terminated sublease. Because Chart House had properly terminated the sublease prior to Maxwell's declaration of bankruptcy, the sublease cannot be assumed by the trustee."). The term of the lease prohibiting GDT from suffering or permitting any lien from being placed against the Property appears to apply regardless of whether a particular mechanic's lien is later determined to meet the requirements of 10 M.R.S. § 3251. The mere act of the recordation of the lien in the registry appears to have been a default of the lease executed by GDT. After Central Street provided notice of default, and the default was not timely cured, the lease was apparently terminated in accordance with its terms. To the extent that the stay applies here, the apparent prepetition termination of the lease and the Debtor's resulting inability to assume the lease constitute cause for relief from stay.

Based on the facts alleged by Central Street and admitted by the Debtor, the Court finds it reasonably likely that Central Street effectively terminated the lease prior to the petition date. This finding "is not a determination of the validity" of Central Street's claims against GDT, "but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the automatic stay." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 33-34 (1st Cir. 1994). This order neither forecloses any efforts by GDT (or the Debtor)

- 5 -

to contest the termination of the lease in state court nor spells the end of the Debtor's efforts to obtain relief through the bankruptcy process.

Dated: June 30, 2021

_____
Michael A. Fagone
United States Bankruptcy Judge
District of Maine